1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GLEN NUTTER                          )
                                     )    No. CV-10-128-LRS
              Plaintiff,             )
                                     )    **ORDER RE SUMMARY**
v.                                   )    **JUDGMENT MOTIONS**
                                     )
UPS GROUND FREIGHT                   )
                                     )
                                     )
              Defendant.             )
_____     )

**BEFORE THE COURT** are the Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment (ECF Nos. 46 and 50). Oral argument was heard on July 6, 2011. William Edelblute, Esq., argued for Plaintiff. Michael T. Reynvaan, Esq., and Javier Garcia, Esq., argued for Defendant.

Defendant seeks judgment as a matter of law on Plaintiff's claims alleging: (1) violation of the Family Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq.*, Washington Family Leave Act (WFLA), RCW 49.78, and the public policy of the State of Washington regarding the need for medical leave for parents and families; (2) violation of Plaintiff's employment agreement with Defendant; (3) Defendant's retaliatory discharge of Plaintiff motivated by Plaintiff speaking in favor of union involvement at his place of employment; and (3) refusal to accommodate Plaintiff's disability in violation of the Washington Law Against Discrimination (WLAD), RCW 49.60.180.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-          1**

The Plaintiff seeks judgment as a matter of law regarding his claim that the Defendant interfered with, and therefore violated, his rights under the FMLA.

**BACKGROUND**

Plaintiff, Glen Nutter, began working as a truck driver for Defendant, UPS Ground Freight, in 2003 when he was hired by Defendant's predecessor, Overnite Transportation. The Plaintiff's typical work week began on Sunday evening and was over Thursday night when he returned home after delivering his final load. (ECF No. 48). This was the Plaintiff's work week for the six months prior to his termination. *Id.* Before the incident at hand, the Plaintiff had no other problems or disciplinary measures noted on his driving record. *Id.*

In October, 2007, Plaintiff was granted FMLA leave when his surgeon, Dr. Giddings, completed the form titled, "UPS Freight FAMILY MEDICAL LEAVE REQUEST & CERTIFICATION OF PHYSICIAN OR PRACTITIONER (Family and Medical Leave Act of 1993)." (ECF No. 49, Ex. 8). Dr. Giddings indicated the Plaintiff suffered from Meniere's disease and it was possible that he would have to undergo surgery to treat his symptoms. *Id.* The Plaintiff decided not to have the surgery and instead returned to work on November 2, 2007. Plaintiff's primary physician, Dr. Trail, completed the "UPS Freight Return to Duty - Seven Question Form," indicating that the Plaintiff "should limit hours to 40/week." (Ex. 9 to Nutter Dep., ECF No. 49-4 at SOF 111-115). This form was given to Tony Badger, the Defendant's Richland Terminal manager, who then faxed it to another employee at UPS so that it could be placed in the Plaintiff's personnel file. *Id.* After he returned to work, the Plaintiff's reduced work schedule was not an issue prior to his termination. (ECF No. 49 at p. 126).

On Thursday, February 14, 2008, Plaintiff returned to his home in Spokane after delivering a scheduled load to Billings, Montana. He received a phone call from

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-**        **2**

Mr. Badger around 4 p.m. stating the Defendant needed the Plaintiff to deliver a load from Richland to Seattle the following day, Friday, February 15th. Over the course of the next few hours, the Plaintiff and Mr. Badger had at least two telephone conversations regarding the next morning's dispatch. The parties agree the Plaintiff told Mr. Badger he had plans for that evening and a doctor's appointment to attend the next day, and that he was not available to deliver the load. The Plaintiff admits he became frustrated during the course of their conversations, raised his voice to Mr. Badger, criticized his performance as a terminal manager, and hung up on him. The parties dispute the Plaintiff's exact conduct during the telephone conversations; the Defendant maintains the Plaintiff was inappropriate and unprofessional, yelled at Mr. Badger telling him he should "jump in the spare truck and deliver the load himself," and to "just deal with it." The Plaintiff, however, contends Mr. Badger repeatedly told the Plaintiff he did not care about his family problems and that he was going to deliver the load the following day. The Plaintiff did not arrive at the Richland Terminal on February 15th. Mr. Badger began a "Discipline Investigation" and the Plaintiff was subsequently terminated for insubordination and failure to follow an order. The Plaintiff maintains he could not have been dispatched because he was contacted outside of the "normal" dispatch hours; therefore, he could not have refused a dispatch.

The doctor's appointment the Plaintiff had to attend on February 15th was for his teenage daughter who began suffering seizures in late January, 2008. The Plaintiff alleges he informed Stacy Quick, the Defendant's dispatcher at the Richland Terminal, about this appointment on or about February 4, 2008, requesting he not be on call so that he could attend the appointment. The Declaration of John Burgess (ECF No. 60) supports the possibility that Ms. Quick was in fact informed of the appointment; however, the Defendant maintains that any record of the Plaintiff making such a request was lost when Ms. Quick threw out her desk calendar at the

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        3**

1    end of the month, which is her normal practice.

2        The Plaintiff admits he never mentioned his 40 hour work restriction or any
3    other disability during the February 14th conversations.  Plaintiff maintained driving
4    logs, as per Washington Department of Transportation (DOT) regulations, that were
5    in his possession at that time and asserts he was the only person capable of knowing
6    how many hours he had worked that week.  The Plaintiff's logs show he had already
7    worked at least 37 hours that week; therefore, the additional haul on February 15th
8    would have exceeded his 40 hour work restriction.  Mr. Badger claims he and Ms.
9    Quick checked to be sure the Plaintiff had available hours before dispatching him on
10   the February 15th load.  Under DOT regulations, a driver has available hours as long
11   as they have not yet driven 70 hours in a week and they have had 10 hours of rest in
12   between hauls.  Mr. Badger claims  the Plaintiff had available hours under DOT
13   regulations, but it is unclear how he was able to compute that since the Plaintiff's
14   driving logs were in the Plaintiff's possession.

16   **LEGAL STANDARD**

17       The purpose of summary judgment is to avoid unnecessary trials when there
18   is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129
19   (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P.
20   56, a party is entitled to summary judgment where the documentary evidence
21   produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby,*
22   *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727,
23   732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute
24   over a fact that might affect the outcome of the suit under the governing law.
25   *Anderson*, 477 U.S. at 248.

26       The moving party has the initial burden to prove that no genuine issue of
27   material fact exists.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-        4**

574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim.  *Celotex*, 477 U.S. at 322-23.

### DISCUSSION

### I. Plaintiff's Motion for Partial Summary Judgment

The Plaintiff contends the Defendant interfered with his right to take FMLA leave when he was terminated for not accepting the February 15th dispatch which he says would have violated his 40 hour work restriction.

Under FMLA, an employee is entitled to qualified leave in the form of a reduced work schedule. 29 U.S.C. § 2612(a).  The FMLA prohibits adverse employment actions against an employee for taking leave under the Act.  It is unlawful for an employer to "interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided" by the Act.  29 U.S.C. § 2615(a)(1).  The FMLA recognizes two separate claims for violation of its provisions: 1) interference claims in which employers burden or outright deny substantive statutory rights to which an employee is entitled under 29 U.S.C. § 2615(a)(1); and 2) retaliation claims in which employers discharge employees for exercising their FMLA right to leave

**ORDER RE SUMMARY
JUDGMENT MOTIONS-        5**

1  under 29 U.S.C. § 2615(a)(2).  *Bachelder v. America West Airlines, Inc.*, 259 F.3d

2  1112, 1124 (9th Cir. 2001).  In the Ninth Circuit, claims alleging that an employer

3  took adverse employment action against an employee for taking or asserting a right

4  to take FMLA leave are treated as Section 2615(a)(1) interference claims, rather than

5  Section 2615(a)(2) retaliation claims.  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133,

6  fn. 7 (9th Cir. 2003).  In order for an employee to succeed on an interference claim,

7  he must show:

8          (1) he is an eligible employee; (2) his employer is an employer
           under the FMLA; (3) he was entitled to take the FMLA leave at
9          issue; (4) he gave adequate notice of his intention to take the
           leave; and (5) the defendant denied him, or actually discouraged
10         him from taking, such leave.

11  *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1169 (E.D. Cal. 2009).

12         At issue is whether the Defendant had adequate notice of the Plaintiff's need

13  for FMLA leave based on his reduced work schedule.  The statute requires an

14  employee to provide an employer with adequate notice of foreseeable leave. 29

15  U.S.C. § 2612(e)(1). When leave is not foreseeable, however, an employee is allowed

16  to advise the employer of the need for FMLA qualifying leave as soon as practicable.

17  *Id.*  The required notice need not be detailed; it need only notify the employer of

18  circumstances suggesting "that FMLA may apply." *Bachelder*, 259 F.3d at 1130

19  (holding it is the employer's responsibility, not the employee's, to determine whether

20  a leave request is likely to be covered by the FMLA).  When an employee seeks leave

21  due to a FMLA-qualifying reason, for which the employer has previously provided

22  FMLA-protected leave, the employee must specifically reference the qualifying

23  reason for leave or the need for FMLA leave. 29 C.F.R. § 825.302(c).

24         Under the FMLA, when leave is to be taken "*on a reduced schedule basis*,

25  notice need only be given one time, but the employee shall advise the employer as

26  soon as practicable if dates of scheduled leave change or are extended, or were

27  initially unknown." 29 C.F.R § 825.302(a) (2008) (emphasis added).  Most courts

28

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          6**

have held that while notice of leave taken on an intermittent or reduced schedule basis need only be given once, an employee must advise his or her employer of any changes or modifications to the dates of leave.   Ultimately, however, whether adequate notice was given to the employer is a question that must be answered by a jury. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009) (holding that whether the company had adequate notice that former employee was seeking leave for which he was eligible under FMLA was a question for the jury); *Zawadowicz v. CVS. Corp.*, 99 F.Supp.2d 518, 529 (D.N.J., 2000) (finding that whether or not a "Leave of Absence" form put the employer on notice that all future absences were FMLA qualifying absences was a question for the jury).

The Defendant contends the "Return to Work Form" completed by Dr. Trail, stating the Plaintiff "should limit hours to 40/week," was merely a vague recommendation, not a mandatory imposition on his return to duty. (ECF No. 63 at p. 8).  The deposition of Dr. Trail indicates he intended to allow the Plaintiff some flexibility in coming up with a work schedule that would be best for both he and his employer, while still keeping his condition under control. (Dep. of Jeffery Trail, ECF No. 65-8, Ex. I at pp. 40-41).  Dr. Trail's deposition testimony appears to make clear that he believed the Plaintiff should follow the 40 hour restriction because of his serious medical condition.  At the very least, if the Defendant had questions regarding the validity of the restriction, it was its responsibility to seek further information by way of a medical certification or by inquiring from either the Plaintiff or his physician.

The Defendant also argues that even if the 40 hour return to work restriction was valid, it was not a blanket notice allowing the Plaintiff to take FMLA leave whenever he desired without providing further notice to his employer.  The Plaintiff gave initial notice of his work restriction in November 2007; however, he failed to mention it during the conversations on February 14th.   Therefore, it must be

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-**          **7**

determined whether the one time notice of this restriction, three to four months earlier, was adequate, creating a question of liability on the part of the Defendant for terminating the Plaintiff once he exercised his FMLA rights.  The law is not settled on this issue.  The two different regulations cited earlier seem to contradict each other on this point. 29 C.F.R. § 825.302(a) states that notice of leave taken on a reduced schedule need only be given once, while § 825.302(c) states that when an employee is seeking to take leave for a condition under which he has already been granted leave, he must explicitly invoke his FMLA eligibility.  Courts have similarly been divided, and as stated above, the question of adequate notice is generally submitted to a finder of fact.  Therefore, the Plaintiff's Motion for Partial Summary Judgment is **DENIED.**

## II.    Defendant's Motion for Summary Judgment

### A. FMLA and WFLA Claims

The Defendant moves for summary judgment on Plaintiff's FMLA and WFLA claims.  As this Court indicated in *Kopp v. Reardan/Edwall Sch. Dist. No. 009*, 2009 WL 774122 at 8 n.4 (E.D. Wash. Mar. 19, 2009), there are no published Washington opinions involving a cause of action brought pursuant to RCW 49.78.300; however, the language of the WFLA appears identical to that of the FMLA, therefore it is reasonable to believe there are no substantive differences between the two acts and they may be evaluated using the same analysis.

The Defendant contends the Plaintiff's claims of wrongful discharge in violation of the FMLA and WFLA fail because there is no statutory protection for an employee who is terminated as a result of insubordination and wrongful conduct.  While the Defendant cites numerous cases in support of its argument, it is asking the Court to weigh the evidence and make a judgment based on the credibility of statements made by the parties; such a practice is not proper when ruling on a

**ORDER RE SUMMARY JUDGMENT MOTIONS-    8**

summary judgment motion.  *Anderson*, 477 U.S. at 249.  The facts regarding the conduct of the parties during the February 14th telephone conversations are in dispute and it is only proper to put the questions of fact before a jury.  The court cannot find as a matter of law that Plaintiff was insubordinate considering: 1) Plaintiff's reference to needing to attend his daughter's medical appointment; 2) the seeming awareness of Defendant and Mr. Badger specifically of Plaintiff's 40 hour restriction[1]; and 3) the differing accounts of the substance and tone of the February 14th telephone conversations provided by Plaintiff and Mr. Badger.  Raising one's voice does not necessarily constitute "yelling" and it will be the province of the factfinder to determine if Plaintiff was insubordinate, justifying his subsequent termination from employment, in spite of any statutory rights (FMLA, WLFA and WLAD) to which he might otherwise have been entitled.

Defendant maintains that, regardless of the Plaintiff's conduct, he failed to provide adequate notice of his need to take FMLA leave.  As discussed above with regard to the Plaintiff's motion, the question of notice is one that must be placed before a jury.  There remain material questions of fact regarding the Defendant's notice of the 40 hour work schedule and the Plaintiff's need to attend his daughter's medical appointment on the date in question.  Therefore, the Defendant's Motion for Summary Judgment regarding the FMLA and WFLA claims is **DENIED**.

*B. Wrongful Discharge in Violation of Public Policy*

When an employer terminates an employee for reasons that clearly contradict a mandate of public policy, a claim for wrongful discharge may arise.  *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996).  The Plaintiff

---

[1] Defendant acknowledges that in the six month period prior to his discharge, Plaintiff was never requested to work beyond a 40 hour workweek and never worked more than 40 hours in a week.

**ORDER RE SUMMARY JUDGMENT MOTIONS-          9**

alleges his discharge violates public policy, specifically that stated in the WFLA, RCW 49.78.010, which is to encourage parents to assist in the provision of needed medical care for their children, and to provide reasonable time off from work to do so.  This particular public policy is part of the legislative findings regarding the WFLA.      In order for a plaintiff to prevail on a public policy claim, he must establish wrongful intent to discharge in violation of public policy on the part of the former employer. *Id.*  To satisfy the cause of action, the plaintiff must prove "(1) the existence of a clear public policy (*clarity* element); (2) that discouraging the conduct in which [he or she] engaged would jeopardize the public policy (*jeopardy* element); and (3) that the public-policy-linked conduct caused the dismissal (*causation* element)." *Hubbard v. Spokane County*, 146 Wn.2d 699, 707, 50 P.3d 602 (2002) (citations omitted).  Finally, the defendant must not be able to show there was an overriding justification for the dismissal (*absence of justification* element).   *Id.* There is no doubt that the Plaintiff can prove the clarity element; the public policy asserted is spelled out in RCW 49.78.010.  As Defendant argues, however, Plaintiff has failed to show the jeopardy element of the claim.

The jeopardy element is established when the plaintiff shows that he "engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy." *Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 181, 125 P.3d 119 (2005).  The plaintiff must prove two things.  One, that discouraging the conduct he engaged in would jeopardize the public policy; and two, that other means of promoting the public policy are inadequate.  *Id.*  The question of whether or not the jeopardy element is satisfied is generally a question of fact; however, whether adequate alternatives exist for promoting the public policy may present a question of law, i.e., whether the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting public policy. *Id.*  When the statute upon which the

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-          10**

public policy tort is premised, in this case the WFLA, has adequate enforcement procedures, the jeopardy element cannot be met. *Id.* at 181-182.

In *Batacan v. Reliant Pharmaceuticals*, 324 F. Supp. 2d 1144, 1145 (D. Haw. 2004). the plaintiff alleged wrongful termination in violation of public policy in addition to her FMLA claim.  Hawaii law recognizes a common law action for wrongful termination in violation of public policy similar to that asserted by the Plaintiff in the present case. In *Batacan*, the court granted the defendant's motion to dismiss, based on the plaintiff's inability to prove the existence of the jeopardy element of her public policy claim. *Id.*  The court reasoned that the FMLA provided comprehensive remedial schemes to vindicate its public policy goals, therefore, the plaintiff could not satisfy the jeopardy element of the common law public policy claim. *Id.* at 1147.  Although *Batacan* dealt only with the FMLA and the Plaintiff in the present case relies on the public policy behind the WFLA, because the two statutes are nearly identical and analyzed under a similar framework, it is reasonable to conclude that the remedial schemes offered by the WFLA would also bar a public policy claim.[2]

Because the Plaintiff cannot satisfy the jeopardy element of the wrongful termination in violation of public policy claim, the Defendant's motion for summary judgment regarding that claim is **GRANTED**.


*C. Termination in Retaliation for Union Activity*

The Plaintiff claims he was terminated in retaliation for alleged union activity. The Defendant moves for summary judgment on this claim, arguing the Plaintiff has presented no evidence of union retaliation and is basing his claim on a single hearsay comment that failed to implicate the Plaintiff.  The Plaintiff does not oppose the

---

[2] The legislative findings in support of the FMLA are nearly identical to the language of RCW 49.78.010.  29 U.S.C § 2601.

**ORDER RE SUMMARY JUDGMENT MOTIONS-        11**

1   Defendant's motion for summary judgment regarding this claim.

2        The Defendant claims there is no evidence that it was aware of the Plaintiff's
3   alleged union activity. (ECF No. 48 at p. 14).  In his declaration, Myron Sherburn
4   states he told the Plaintiff to avoid going into Ms. Quick's office one day because she
5   and Mr. Badger were "on a 'witch-hunt' to find out who gave the names to the
6   union." (ECF No. 62).  Mr. Sherburn did not indicate that Ms. Quick and Mr. Badger
7   were specifically looking for the Plaintiff, nor that they had any idea as to who the
8   specific individual was.  Also, in his deposition, Mr. Badger indicates he had no
9   knowledge of any union activity involving the Plaintiff.  (ECF No. 49-3 at SOF 49).
10  On numerous occasions, courts have been unwilling to find termination was
11  discriminatory where there was an insufficient showing that the employer had
12  knowledge of the employee's union involvement.  *NLRB v. Buddies Supermarkets,*
13  *Inc.*, 481 F.2d 714 (5th Cir. 1973) (finding discharge was proper where there was
14  evidence that employee was terminated because of dishonesty and there was no
15  indication the company was actually informed of employee's union sympathies);
16  *NLRB v. Klaue*, 523 F.2d 410 (9th Cir. 1975) (finding Board determination of
17  discriminatory discharge was not supported by inference that employer knew of
18  employee's union activity because "everyone knew," and one of only two
19  management personnel testified he was unaware of union activity).

20       Because Plaintiff has failed to show that Defendant had adequate knowledge,
21  if any at all, of his alleged union activities, and has failed to oppose the motion, the
22  Defendant's Motion for Summary Judgment on the retaliation claim is **GRANTED**.

23
24       *D. Breach of Contract/Employment Agreement*
25       Plaintiff claims Defendant violated the terms of the employment agreement or
26  contract when it discharged him before contacting other drivers to deliver the
27  unscheduled load and took disciplinary action contrary to those spelled out in the
28

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        12**

employee handbook.  The Defendant maintains the Plaintiff was an at-will employee and there was no contract or agreement between the two parties that could have been violated.  Furthermore, the Defendant argues that it was within company policy to terminate the Plaintiff because his conduct fell under the type of misconduct that warrants termination after the first offense.    Plaintiff asserts the "UPS Freight Employee Rule Book - TL" created an implied contract between the parties and he was entitled to specific treatment according to the handbook.  Specifically, the Plaintiff argues termination is proper only after the third unexcused absence and he was entitled to the progressive disciplinary measures outlined in the employee manual.

Generally, an employment term for an indefinite duration may be terminated by either the employer or the employee at any time, with or without cause.  *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081, 1084 (1984).  It is undisputed that Plaintiff was an at-will employee.  There is a disclaimer in both the front of the UPS employee handbook and on an acknowledgment form, signed by the Plaintiff, indicating none of the statements in the employee handbook create an employment contract and that the relationship between UPS and the employee remains at-will, terminable by either party.  (ECF No. 49, Ex. 3 at pp. 99-100).  In *Thompson*, the court stated that an the at-will agreement may be modified by promises of specific treatment in specific situations found in an employee handbook, obligating the employer to act in accord with such promises. 102 Wn.2d at 233. Plaintiff claims Defendant was obligated to follow the progressive disciplinary steps laid out in the employee handbook for unexcused absences.  Defendant contends it properly terminated the Plaintiff according to the employee handbook and its policy for immediate termination.

In *Stewart v. Chevron Chemical Co.*, 111 Wn.2d 609, 614, 762 P.2d 1143, 1146 (1988), the Supreme Court of Washington held that because the company

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-**          **13**

maintained discretion in applying discipline procedures, the former employee was not entitled to the specific treatment that he claimed.  In *Stewart*, the plaintiff filed suit against his former employer after he was discharged during a reorganization scheme within the company. *Id.* at 610.  The employee manual stated management *should* consider performance, experience, and length of service when making decisions regarding layoffs. *Id.* at 611 (emphasis added).  The company indicated the plaintiff was being laid off because he had the poorest performance rating, despite having the longest service tenure among all shift supervisors. *Id.*  The plaintiff claimed he was entitled to specific performance, in that the company should have considered his length of service in addition to his performance. *Id.*  The court, however, held such specific treatment was not warranted because the language of the employee manual indicated the company had the ability to exercise discretion in making termination decisions. *Id.* at 613-614.  The court reasoned that the use of words like "shall", "will", and "must" elsewhere in the handbook indicated the company intended the layoff provision to be advisory. *Id.*

Similar reasoning may be applied to the present case.  The employee handbook gives a non-exhaustive list of misconduct for which employees may be subject to immediate termination.  The provision includes language like "depending on the circumstances" and "may subject an employee to termination".  It follows then, that just as in *Stewart*, the Defendant maintained discretion over its termination procedures and the Plaintiff was not entitled to specific treatment. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's contract claim is **GRANTED**.

### E. Washington Law Against Discrimination Claim

Under the WLAD, it is unlawful for an employer to discriminate against any person in the terms or conditions of employment, or discharge any employee because

of the presence of any sensory, mental, or physical disability.  RCW 49.60.180(2) and (3).  If the employer fails to reasonably accommodate the limitations of a disabled employee, such failure constitutes discrimination unless the employer can demonstrate such an accommodation would be an undue hardship to the employer's business.  *Snyder v. Medical Serv. Corp.*, 98 Wn.App. 315, 326, 988 P.2d 1023 (1999).    Generally, whether an employer breached its duty of reasonable accommodation is a question of fact for jury determination.  *Pulcino v. Federal Express Co.*, 141 Wn.2d 629, 644, 9 P.3d 787 (2000).

A *prima facie* case of failure to reasonably accommodate a disability under the WLAD includes:  (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.  *Davis v. Microsoft Corporation*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003).    The burden is on the employee to present a *prima facie* case of discrimination, including medical evidence of disability.  *Pulcino*, 141 Wn.2d at 642. Only when the employee meets this burden, does the burden of proof shift to the employer to show that it had a legitimate, non-discriminatory reason for its adverse employment action against the employee.

An employer's responsibility to provide reasonable accommodation requires it to: (1) determine the extent of the employee's disability and how it could be accommodated; (2) take affirmative steps to help the employee continue working in his existing position; (3) take affirmative steps to inform the employee of job opportunities within the company; and (4) consider the employee for and move him into openings for which he is qualified.  *Griffith v. Boise Cascade, Inc.*, 111 Wn.App.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-**          **15**

436, 442, 45 P.3d 589 (2002).   An employer is not required to offer the exact accommodation an employee desires. *Doe v. Boeing Co.*, 121 Wn.2d 8, 20, 846 P.2d 531 (1993).

The Plaintiff claims his Meniere's disease is a qualifying disability under WLAD and that he asked for a reasonable accommodation by way of the 40-hour work week restriction and the same was denied when the Defendant discharged him following the events of February 14, 2008.  Defendant contends Plaintiff's claim fails as a matter of law because he never provided the Defendant with the proper notice of his disability and need for accommodation.   The Defendant also maintains the reasonable accommodation the Plaintiff claims he had was never denied because Plaintiff was never forced to work more than 40 hours a week.

Generally, the question of whether there was a reasonable accommodation given is one for the jury. *Pulcino*, 141 Wn.2d at 644.  Also, along the same lines as Plaintiff's FMLA and WFLA claims, adequacy of notice is properly put before a jury. These two elements of the Plaintiff's prima facie WLAD case present questions of material fact.  As it did in arguing against the FMLA claims, the Defendant proffers that the Plaintiff's misconduct was an overriding justification in support of termination, and not merely pretext.  As indicated previously, Defendant's finding of insubordination needs to be put before a jury because it involves the weighing of evidence and the credibility of Plaintiff and Mr. Badger; therefore, the Defendant's motion for summary judgment regarding the Plaintiff's WLAD claim is **DENIED**.

//

//

//

//

//

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          16**

1

## CONCLUSION

2    Plaintiff's Motion for Partial Summary Judgment (ECF No. 50) is **DENIED**.

3  Defendant's Motion for Summary Judgment (ECF No. 46 ) is **GRANTED** with

4  regard to Plaintiff's public policy, union retaliation, and contract agreement claims.

5  Defendant is awarded judgment on those claims.  Defendant's Motion For Summary

6  Judgment is **DENIED** with regard to Plaintiff's FMLA, WFLA, and WLAD claims.

7    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

8  order and provide copies to counsel.

9    **DATED** this 15th day of July, 2011.

10

11                                   *s/Lonny R. Suko*

12                                   LONNY R. SUKO
                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER RE SUMMARY
JUDGMENT MOTIONS-        17**